## Dodson v. Dodson.

*Divorce—Desertion—Evidence—Sufficiency—Collusion.*

1. The husband is the head of the family and he is expected to provide for the different members of the family, and, as he is to provide the home, the different members of the family are expected to go where he can best provide for them. If he offers a home where his work lies and they refuse his offer, they have no ground for complaint if he refuses to support them in a home of their own choosing.

2. A wife who refused to accompany her husband to places where his business requires him to live and who rents out their former home to strangers without his knowledge and consent and refuses to live with him is guilty of desertion.

3. When such refusal is evidenced by the conduct of the wife and declarations to disinterested witnesses, and is persisted in for a period of more than two years, it constitutes sufficient evidence of desertion to support a decree of divorce.

4. Collusion is not established by proof that the husband suggested that the wife apply for divorce.

Divorce. Exceptions to master's report. C. P. Columbia Co., Feb. T., 1923, No. 4.

*J. L. Evans* and *C. C. Evans,* for libellant; *E. J. Mullen,* for respondent.

POTTER, P. J., 17th judicial district, specially presiding, April 3, 1924.—The libellant has applied for a divorce *a vinculo matrimonii* from the respondent on the charge of desertion. The case was referred to Edward J. Flynn, Esq., as master, who has recommended that a decree of divorce be entered as prayed for in the libel. The master's report is simply advisory to the court: Naylor *v.* Naylor, 59 Pa. Superior Ct. 547. The court may, however, accept the report of the master in whole or in part, and it is its duty to give consideration to the opinion of the master, and particularly so where the veracity of witnesses is involved: Michaels *v.* Michaels, 65 Pa. Superior Ct. 464. And in this case

Dodson *v.* Dodson.

we feel constrained to give to his report due weight and consideration. He met the respective parties and their witnesses face to face, and is, therefore, ordinarily better able to judge as to their credence than is the court.

The libellant and the respondent are both in the sixties in age and have two grown daughters, and, instead of taking means to separate, both should be taking steps to render their declining years those of peace, happiness, contentment and affection after a married life of many years of usefulness.

From the evidence submitted, briefly, we gather the following: That the libellant and the respondent were married in the year 1879 and resided together as husband and wife in various places. That their home appears to have been in Berwick, Columbia County, Pennsylvania, for many years, and, in fact, both of these contending parties to this day claim that town as their respective residences, where for a number of years Mr. Dodson was in the contracting business. About the year 1907 he became interested in several lumbering enterprises, one of which was in Wayne County, Pennsylvania, and another at Vannatta, Virginia, where he was till about the year 1910. That his wife would not accompany him to either of these places, but that she did visit him several times, but did not occupy his room with him. That he visited his wife at their home in Berwick at various times during each year, during which visits they occupied separate rooms. That he was engaged in the coal business at Coshocton, Ohio, and that his wife refused to live with him there, but did pay him several visits, during which she refused to room with him. That while at Coshocton he repeatedly requested her to come and live with him, which she refused to do. That from Coshocton he removed to Pittsburgh, where he has continued to reside up to the present time. That he has invited his wife to come and reside with him at Pittsburgh, which she has refused to do. That his wife has continued to reside in their home in Berwick, Pennsylvania, where this husband, up to within a few years ago, sent her money for her support. That in October, 1920, this wife, without the knowledge or consent of her husband, rented their home in Berwick for the sum of $150 per month, she collecting and keeping the said rental. That several months before the wife rented their said home, she and her husband had a quarrel, when the husband gave her his check for $25 and said he would not give her any more money. That when he came home to Berwick, he stayed at his home in that town. That after the wife rented their said home away, she took up her abode in other quarters without the knowledge or consent of her husband, and that soon thereafter the husband came to Berwick and found another family living in his home and his wife occupying other quarters.

Exceptions to the number of seventeen have been filed to the master's report, but, although couched in different language, they all refer to practically one main subject, which is that the evidence submitted is not sufficient to sustain a divorce.

So that all our discussion in this opinion contained relates to all the exceptions without taking them up *seriatim.*

While in Wayne County, Pennsylvania, while in Virginia, while in Coshocton, Ohio, and while in Pittsburgh, this libellant asked this respondent repeatedly to come and live with him, and every time she refused to do so. He offered to rent her a home or to have one remodeled where his work was located, to which she refused.

The husband is the head of the family, and he is expected to provide for the different members of the family, and, as he is to provide the home, the different members of the family are expected to go where he can best provide

the home for them. If he offers them a home where his work lies and they refuse his offer, they have no complaint to make if he refuses to support them in a home of their own choosing, and, in fact, he don't need to do so.

When this libellant found it to be to his advantage to go to Wayne County, Pennsylvania, in order to make a living for himself and his family, he asked his wife to go with him. She refused to do so. Later on, when the business of life called him to Virginia, he again asked her to go with him, and she again refused. When he removed his business activities to Coshocton, Ohio, another time, he asked her to go with him, and she again promptly refused. Then, when he removed to Pittsburgh, he again asked her to go with him, and, as on the three previous occasions, she refused to accompany him. We do not know just how long this husband's patience was supposed to last, but there is a limit to every thing. There is nothing in the testimony in this case that would in any way indicate that his requests that she accompany him to any of these four places was improper or unreasonable, and we have nothing before us to show that her refusal to accompany him was in any manner justified. He was the provider, and if he could provide for his wife better at any or all of these places than he could at Berwick, or if it was to his business or financial advantage to locate at any of these four mentioned places, it was her duty to accompany him and endeavor, as a dutiful wife, to make a home for both of them in the new location. From the testimony produced in this case, it seems to us that the date of the desertion of the libellant by the respondent could very easily have been laid as of a date long prior to that laid in the libel. Her refusal to accompany her husband to the fields of his labors, in the light of the testimony produced in this case, would constitute a desertion on her part, and after her refusal to accompany him to the places where his occupation called him, he was not in duty bound to support her in Berwick.

We find that this respondent refused to sustain the relation of wife to this libellant except in name only, and although this of itself is not cause for a divorce, taken with all the other facts in the case, it may shed some light on the question of whether there was a desertion or not, and whether there was an inclination to desert.

We have also as corroborative proof that Emma Wersterfer says that while the respondent was at Coshocton, she had her own separate room and did not share the room of the libellant. She also testified that the respondent told her that her reason for coming to Coshocton was to ascertain her husband's business holdings, and that if he was killed, she never wanted to see him again. The respondent also said she was going to leave, that her husband did not want her to go, that he wanted her to stay with him, but that she would not. That he wanted to rent a house at Coshocton, but she would not go there, and that she would not live with him there nor at any other place. That when she came to Coshocton, she said: "Now, where is my room? Of course, you know I want a room alone." She also said that Mr. Dodson had wanted her to live with him at Wayne County, Pennsylvania, but that she would not go, and that once, when he was out in a storm in Wayne County, she wished he had perished, because there was a good life insurance. This witness, Emma Wersterfer, says Mrs. Dodson volunteered this information to her. There is nothing in this case to throw a shadow of doubt on the testimony of this witness. She is disinterested, and, weighing her testimony by the legal rule, we find it to be credible.

Then we have the testimony of Mrs. Susan Miller, who says she heard the respondent say to the libellant, "Boyd, don't you understand that I cannot

Dodson *v.* Dodson.

live with you?" The respondent admits she said this to him. These facts all tend to prove that the respondent did not intend to live with the libellant, and, with other proof in the case, go to establish the desertion.

The libel fixes the desertion as having occurred in October, 1920, the time when the respondent rented away their home in Berwick unknown to the libellant, left the home and took up quarters somewhere else. We can clearly see how this action on her part with her former actions might well constitute a final act of desertion on her part.

The testimony further develops the fact that the libellant had requested the respondent to apply for a divorce, and told her that if she did not, he would. It is claimed that this amounted to collusion, and that because of it the divorce should not be granted.

"Collusion, in the law of divorce, is a corrupt agreement between the husband and the wife, whereby one of them, for the purpose of enabling the other to obtain a divorce, commits a matrimonial offence, or whereby, for the same purpose, evidence is fabricated of an offence not actually committed, or evidence of a valid defence is suppressed:" 19 Corpus Juris, 91, § 213; Loomis *v.* Loomis, 20 Dist. R. 731.

In the case of Taylor *v.* Taylor, 17 Dist. R. 642, the husband agreed to pay the costs of the divorce if the wife would apply for it. Held, not to be collusion.

In the case of Preston *v.* Preston, 11 Dist. R. 97, Judge Arnold says: "The mutual desire of both persons to be divorced is no reason why a divorce should not be decreed, if the facts in the case warrant the court in granting a divorce and there is no collusion between the parties for the purpose of making evidence in favor of the divorce. It is not collusion to abstain from making a defence, and the guilty party may facilitate the proofs and smooth the asperities of the litigation without injuring the cause." The case of Leonard *v.* Leonard, 67 Pa. Superior Ct. 412, is also in line with the principles herein applied to collusion.

Measured by the standard hereinbefore set up, we cannot find any collusion in the case. The wife persisted in her refusal to live with the husband after repeated invitations by him to resume the marriage relation. He naturally gets tired of her constant and persistent refusal to cohabit with him, and, finally, concludes that, since she will not live with him, they had better be divorced, and, with this end in view, he asks her to apply for a divorce, because, as he says, he thought it would look better for her to apply than for him to do so. He would rather take the blame than shift it on to her. We fail to see any collusion in this.

The desertion is presumed to be malicious where the other elements appear, and especially so in this case, where the respondent so repeatedly refused to live with the libellant, and when she on one occasion told him, according to her own admission, that she could not live with him.

We have very carefully gone over the testimony in this case and the able and painstaking brief of counsel for the respondent, but we cannot endorse his views of the law as applicable to this case.

We have also very carefully gone over the master's report, and we think his recommendation is worthy of our endorsement.

And now, to wit, April 3, 1924, in accordance with the views herein expressed, the exceptions are dismissed, the report of the master is confirmed, and it is ordered that a decree of divorce *a vinculo matrimonii* issue.

From R. S. Hemingway, Bloomsburg, Pa.